## Case No. 14,572.

### UNITED STATES v. BENNETT.

[17 Blatchf. 357; 26 Int. Rev. Rec. 45; 9 Reporter, 136.] [1]

Circuit Court, S. D. New York. Dec. 22, 1879.

COUNTERFEITING — INDICTMENT — NATIONAL BANK NOTES — SEAL OF TREASURY — VARIANCE — COUNTS — JOINDER — TRIAL — PRODUCTION OF WITNESS.

1. An indictment under sections 5431 and 5434 of the Revised Statutes, in setting out counterfeit notes, did not exhibit any imprint of the seal of the treasury, while the notes put in evidence on the trial exhibited such imprint. Held, that there was no such variance as to make it improper to admit the notes in evidence.

2. The notes were circulating notes of a national banking association, but the indictment, while setting them out at length, called them "national bank currency notes." Held, not a variance.

3. At the close of the evidence for the prosecution the defendant requested that one M. be called as a witness for the government. He was not then called. Afterwards, and after the defendant had testified in his own behalf, M. was produced in rebuttal. Held, no error.

4. The circulating notes of a national banking association are valid contracts without having the imprint of the seal of the treasury on them.

5. The indictment is not bad for not giving a fac-simile of the seal to which it refers, or for not setting out the numbers on the notes.

6. The indictment properly charges in different counts different offences, under sections 5431 and 5434, for which different punishments are prescribed by those sections, the offences charged being of the same class of crimes, such joinder being permitted by section 1024.

7. Whether the offences were "properly joined," under section 1024, was a question to be determined on a motion to quash or to compel an election.

8. Where the defendant is convicted of the several offences charged in said indictment, he is, in effect, convicted on separate indictments, and may be separately punished for each offence proved.

[This was an indictment against Frank Bennett. Heard upon motion for a new trial, and in arrest of judgment.]

Sutherland Tenney, Asst. U. S. Dist. Atty.
A. J. Dittenhoefer, for defendant.

Before BLATCHFORD, Circuit Judge, and BENEDICT and CHOATE, District Judges.

BENEDICT, District Judge. The prisoner was tried upon an indictment containing six counts. The first five counts are framed under section 5431 of the Revised Statutes of the United States, and the sixth under section 5434. Having been convicted he now moves for a new trial and in arrest of judgment.

The main question presented on the motion for a new trial is raised by an exception to the admission in evidence of the counterfeit notes offered to prove the several charges in the indictment, on the ground of variance; first, because each note exhibits what pur-

ports to be the imprint of the seal of the treasury, while the notes set forth in the indictment exhibit no such imprint. It is contended, that the provision in section 5172, authorizing the issue of circulating notes by a banking association, which declares that the notes shall "express upon their face that they are secured by United States bonds deposited with the treasurer of the United States, by the written or engraved signature of the treasurer and register, and by the imprint of the seal of the treasury," renders the imprint of the seal a part of the contract, necessary to its validity, and, therefore, necessary to be set out, and proved as laid. But, it is evident, from the language of the statute, just cited, that the imprint of the seal of the treasury is simply intended to be evidence in regard to the security of the contract and forms no part or the contract itself. An indictment of this character is sufficient if it sets forth so much or the note as contains the evidence of the contract, and so much is set forth in this instance. To that extent the notes admitted in evidence correspond exactly with the notes in the indictment, and prove the substance of the charge, although they exhibit, in addition, what purports to be the imprint or the seal of the treasury.

It is next contended, that there is a fatal variance because the notes admitted in evidence are circulating notes of a banking association, while the notes set forth in the indictment are styled therein national bank currency notes. Here, the argument is, that section 5413, which provides that the phrase, "obligation or other security of the United States," shall be held to mean (among other things) "national bank currency," has been modified by the use, in section 5434, of the words, "any obligation or other security of the United States, or circulating note of any banking association organized or acting under the laws thereof," and that a distinction must now be drawn between the circulating notes issued by a banking association and national bank currency. Section 5431 is claimed to be no longer applicable to such circulating notes, and it is urged that the notes admitted in evidence do not correspond with the description given in the indictment. Upon this question our opinion is, that there was no intention to create a distinction between national bank currency and the circulating notes issued by a banking association, by the language employed in section 5434, and that section 5413 is not modified by section 5434. The words "or circulating note," &c., in section 5434, were inserted through excess of caution, no doubt. If there had been the intention to modify section 5413, and thereby to change the scope of section 5415 and section 5431, it may be presumed that such an intention would have been plainly expressed, and not left to follow from a doubtful implication. The notes were, therefore, correctly designated as national bank currency notes, that being the designa-

tion of such notes in section 5413. Besides, the notes are set out at length in the indictment, and show, on their face, that they are circulating notes of a banking association organized under the laws of the United States. The designation of their legal character, given in the indictment, becomes, then, immaterial. Reg. v. Williams, 2 Denison, Crown Cas. 61; U. S v. Trout [Case No. 16,542].

Several other points of variance were made at the trial, viz.: that the numbers—the figure 5, in the corner—the words, "printed by the bureau of engraving and printing, Treasury Department"—the words, "Act approved June 30"—the words, "New York," and "U. S.," over the seal—and the word "Excelsior" —which appear on the notes admitted in evidence, do not appear on the notes set forth in the indictment. But, these differences have not been relied on here and are immaterial. Com. v. Stevens, 1 Mass. 203; Com. v. Bailey, Id. 62.

The only remaining question presented by the motion for a new trial, and calling for attention, arose as follows: At the close of the evidence for the prosecution, a request was made in behalf of the defendant, that the court instruct the district attorney to call as a witness in behalf of the government, one McGuire. The request was refused, and McGuire was not then called. Subsequently, and when the evidence for the defence had been given, the district attorney offered McGuire as a witness, to give evidence in rebuttal. Objection was taken to the witness' being allowed to testify, which was overruled, and the witness then gave evidence in rebuttal. To these rulings exception was taken.

The only ground upon which the request for the instruction to the district attorney, and the subsequent objection to the witness McGuire, were placed is, that injustice would be done, to permit this witness to be informed of the testimony of the prisoner, and then to go upon the stand and contradict him. The case shows, that, when the instruction to the district attorney was prayed, evidence had been given that McGuire was the person who communicated the fact of the possession of these notes by the prisoner; and that he had said that the prisoner had given him a five dollar counterfeit note on the day of his arrest. Whether this evidence had been drawn out by the defendant or the prosecution does not appear in the case; but, the absence of any objection from the defendant shows, that, if not called out by the defence, no point was made in regard to its admission. Whether it was in the power of the district attorney to produce McGuire while the case was with the prosecution does not appear.

The ruling objected to seems to relate simply to the order of proof. but, without intending to admit that a ruling of that character is subject to review, we may say, that we are unable to see, from the case, that any injustice was done to the defendant by the

course pursued. Whether the evidence of McGuire was necessary to make out a case for the prosecution belonged to the district attorney to determine for himself. If Mc-Guire was the bad person supposed by the defence, the district attorney was justified in avoiding, if possible, presenting him to the jury as a witness to establish the case for the government. What the defendant would testify to could not be foreseen, and, when the defendant's testimony compelled the production of evidence in rebuttal, the right of the prosecution to present such evidence by the testimony of any witness able to testify to the facts, is not open to question.

There remain to be considered the points made in support of the motion in arrest of judgment. It is said, that the notes set forth in the indictment are not valid contracts, owing to the absence of the seal, and, therefore, not the subject of forgery. To this, there is one sufficient answer, that, as already stated, the seal of the treasury forms no part of the contract.

Again, it is contended the indictment is bad because it avers that the forged note purported to bear the imprint of the seal of the treasury, but omits to give a copy of the seal. It is said, that, while it would, perhaps, be unnecessary to say anything about the devices, yet when they are described a fac-simile or copy must be given. But, if, as has been seen, it was unnecessary, in setting forth the note, to set forth the seal, stating that the note purported to have a seal cannot affect the validity of the indictment.

It is further contended, that the indictment is insufficient, because, by omitting the numbers on the bills, it renders the record unavailable as a bar to a subsequent prosecution for the same offence. The case does not show that the numbers upon any one of the notes admitted in evidence would identify the note. On the contrary, several of the notes exhibit the same numbers. Nor is it necessary that the indictment be so particular that the record will, upon its face, and without extrinsic evidence, identify the subject-matter of the charge. The subject-matter of a former trial is always a matter of evidence and may be proved like any other fact. The books show many cases where such a particularity of description as is here contended for has been held unnecessary.

Lastly, it is contended that judgment must be arrested because the indictment charges different offences, for which different punishments are prescribed by statute; and Tweed's Case (People v. Liscomb, 60 N. Y. 559) is cited in support of the objection. An examination of the doctrine declared in that case would be out of place here, because this is a prosecution instituted under a statute of the United States, which permits the joinder of separate and distinct offences in one indictment, in separate counts. No doubt is entertained that section 1024 of the Revised Statutes permits the joinder in a single indictment, in separate counts, of offences created by section 5431 and an offence created by section 5434, notwithstanding the fact that the punishment prescribed by section 5431 is a fine of not more than $5,000, and imprisonment at hard labor not more than 15 years, and the punishment prescribed by section 5434 is imprisonment at hard labor not more than 10 years, or a fine of not more than $5,000, or both. It would seem, from the case, that, in this instance, the several charges are for the same transaction, or for transactions connected together. They appear to have occurred at the same time and were proved by the same witnesses. But, if not, the offences are similar in character, the challenges are the same, and the punishments alike in kind, differing only in degree, and they are, therefore, of "the same class of crimes" within the meaning of section 1024. Whether the joinder was calculated to embarrass the prisoner, and, therefore, the offences not "properly joined," within the meaning of the statute, was a question to be determined by the judge in his discretion, on a motion to quash or to compel an election. Com. v. Birdsall, 69 Pa. St. 482.

No difficulty in regard to the judgment to be entered arises from the difference between section 5431 and section 5434 in respect to the punishment prescribed. The prisoner has been convicted of the several offences charged in the indictment. Each count, charging a separate and distinct offence, is, in legal effect, a separate indictment, and a conviction thereon may be followed by a sentence imposing such punishment as the statute has prescribed for that offence. The statute, in permitting the joinder of different offences in a single indictment, and even the consolidation of two or more indictments, by necessary implication authorizes a separate punishment for each offence proved. Otherwise, a conviction of offences permitted to be joined would be the same, in effect, as an acquittal.

We have now considered all the points in behalf of the prisoner that can be claimed to be worthy of notice, and find no ground upon which to grant a new trial, or to arrest the judgment. The motions are, therefore, denied.