Emmet O'NEAL, Appellant,

v.

COWLES MAGAZINES, Inc., Fletcher Knebel, and Jack Wilson, Appellees.

No. 12311.

United States Court of Appeals District of Columbia Circuit.

Argued April 11, 1955.

Decided July 14, 1955.

Messrs. Camden R. McAtee and La-Vern R. Dilweg, Washington, D. C., with whom Messrs. Charles M. Irelan and T. Bruce Fuller, Washington, D. C., were on the brief, for appellant.

Mr. John F. Harding, of the bar of the Court of Appeals of New York, pro hac vice, by special leave of Court, New York City, with whom Mr. Hugh Lynch, Jr., Washington, D. C., was on the brief, for appellees.

Before WILBUR K. MILLER, WASH-INGTON and DANAHER, Circuit Judges.

WASHINGTON, Circuit Judge.

This is an appeal from a judgment for the defendants in a libel suit, after jury trial.

It appears that the plaintiff O'Neal, a Member of Congress at the time, was described in an article published in Look Magazine as having asked the Department of Justice to give "careful consideration" to a petition for commutation of sentence addressed to the President by James J. Gavin, then incarcerated in a Federal prison. The commutation of sentence was granted. This episode, along with others of a similar nature in which Congressman O'Neal was not involved, was the subject of adverse comment in the article. Plaintiff-appellant does not deny making his request to the Department of Justice in regard to Gavin's petition, but claims that the article must nevertheless be treated as libelous *per se.*

■ He bases his claim on the proposition that the grant of a commutation of sentence is entrusted solely to the Executive [1] and is not subject to judicial review or control.[2] From this he deduces that the facts which may have led the President to grant a commutation in a particular case—undisputed as they are here—must nevertheless be treated as legally non-existent, i.e., non-discoverable and non-provable. He urges that a charge that a Congressman by the influence of his intervention may have induced the President to grant a commutation of sentence is closed to the defense of truth in the Congressman's libel suit against the publisher. Plaintiff-appellant contends accordingly that upon proof of the contents of the article he was entitled to a directed verdict of liability, leaving to the jury only the issue of damages.

But we cannot agree that imperviousness of an Executive act to judicial review raises it above public criticism and protects those who procured or induced it from disclosure of, and comment upon, their activities. If, because no one has standing in the courts to attack some action of the Executive or of Congress, that action is entirely removed from public scrutiny and press criticism, the end of a free society as we know it would

---

1. U. S. Constitution, Art. II, Sec. 2:
   " * * * and he [the President] shall have Power to grant Reprieves and Pardons for Offenses against the United States, except in Cases of Impeachment."

2. Lupo v. Zerbst, 5 Cir., 1937, 92 F.2d 362, certiorari denied 1938, 303 U.S. 646, 58 S.Ct. 645, 82 L.Ed. 1108. Generally see Ex parte Garland, 1866, 4 Wall. 333, 71 U.S. 333, 418 L.Ed. 366; In re Grossman, 1925, 267 U.S. 87, 45 S.Ct. 332, 69 L.Ed. 527; Yelvington v. Presidential Pardon & Parole Attorneys, 1954, 94 U.S.App.D.C. 2, 211 F.2d 642; United States v. Wright, D.C., E.D.Ill.1944, 56 F.Supp. 489, 492.

soon be at hand. Appellant has not cited to us any authority to sustain his claim of immunity from criticism and we are satisfied that there is none.[3] Misuse of the privileges of the press may call for redress in a suit for libel, under the established patterns of the law.[4] But no such principle as that for which plaintiff-appellant contends—a principle akin to that of *lèse majesté*—is part of the law on the subject.

What appellant was entitled to was a fair trial of his allegations, under the rules applicable to libel suits generally. See Sweeney v. Schenectady Union Pub. Co., supra, note 3. This, we are satisfied, he received. As far as we can judge from the limited record before us, the charge to the jury was accurate, clear and fair. No objection was made to the charge, other than on the theory we have just rejected.

■ Appellant also urges that the court erred in allowing defendants to introduce copies of newspaper articles, written prior to the Look article, in which very much the same story was given. But appellant has not supplied us with a copy of the transcript of the testimony as a part of his record on appeal. Under the circumstances, we do not know whether any objection was made at the trial and, if so, on what ground. We do not know precisely how the court ruled. We do not know the nature of the testimony in connection with which the newspaper articles were offered. We do not know whether in fact exhibits were placed in the hands of the jury. Under these circumstances, appellant is in no position to urge error.

■ Appellant further complains of the action of the court in denying a motion for a new trial. It appears that after verdict the plaintiff-appellant filed affidavits to the effect that one of the jurors on the evening before the submission of the case to the jury had told a friend that the verdict would be unfavorable to the plaintiff. The court conducted a careful inquiry. The juror in question took the stand and denied having made the statements alleged. There is no showing that the juror had been influenced by the defendants or that the statement (if made) in any way prejudiced the plaintiff or prevented the trial from being a fair one. See Pough v. Capital Transit Co., 1952, 90 U.S.App. D.C. 185, 186, 194 F.2d 355, 356.

We have examined the record and find nothing requiring reversal.

Affirmed.

---

3. Compare Sweeney v. Schenectady Union Pub. Co., 2 Cir., 1941, 122 F.2d 288. There the court reinstated a complaint alleging libel of plaintiff (a Member of Congress) through a charge that he was motivated by racial prejudice in opposing appointment of a certain attorney as a Federal judge—a presidential function non-reviewable by the courts. See also Sweeney v. Caller-Times Pub. Co., D.C. S.D.Tex.1941, 41 F.Supp. 163; Sweeney v. Newspaper Printing Corp., 1941, 177 Tenn. 196, 147 S.W.2d 406; Noel, Defamation of Public Officers and Candidates, 49 Col.L.Rev. 875 at 882–3 (1949).

4. Noel, loc. cit. supra, n. 3.